UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DIRK HUGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18-CV-3233 |
| | ) | |
| IDOC, LT. DOUGLAS GOODING, | ) | |
| C/O BRANDT A. MOUNTIAN, | ) | |
| WARDEN CAMERON WATSON, | ) | |
| DIRECTOR JOHN BALDWIN, and | ) | |
| JULIA HUSTON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff proceeds pro se from his incarceration in Pinckneyville Correctional Center. His Complaint is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. This section requires the Court to identify cognizable claims stated by the Complaint or dismiss claims that are not cognizable.[1] In reviewing the complaint, the Court accepts the factual allegations as true,

---

[1] A prisoner who has had three prior actions dismissed for failure to state a claim or as frivolous or malicious can no longer proceed in forma pauperis unless the prisoner is under "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

liberally construing them in Plaintiff's favor and taking Plaintiff's pro se status into account. <u>Turley v. Rednour</u>, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" <u>Alexander v. U.S.</u>, 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted).

## Allegations

On November 16, 2017, Plaintiff went to the health care unit at Western Illinois Correctional Center to receive medication. When Defendant Nurse Huston gave Plaintiff his medicine, Plaintiff asked, "Nurse Huston, how is it that you get more gorgeous every time I see you?" Plaintiff maintains that he was only offering a polite compliment. The other inmates in the waiting area laughed, and Nurse Huston allegedly became embarrassed. Plaintiff alleges that he apologized to Nurse Huston for embarrassing her.

Shortly after Plaintiff returned to his cell he was handcuffed and walked to segregation. Plaintiff then received a disciplinary report written by Nurse Huston charging Plaintiff with intimidation or threats, dangerous communications, and insolence. Nurse Huston described her interaction with Plaintiff as follows:

> [Inmate Hugo] was sitting in the health care waiting room with four other inmates. Inmate Hugo asked this nurse for his medication. After issuing inmate Hugo his medication he stated, "Nurse Huston can I ask you a question." I then asked what. Hugo responded "Why is it every time I see you, you look more and more gorgeous." This nurse walked away from the cage. After inmate Hugo's statement, the other four inmates in the waiting room became verbally engaged in Hugo's statement and began laughing, drawing attention to this nurse and causing a disturbance in the waiting room. This nurse had my back turned to the waiting room and Hugo stated, "What's wrong Ms Huston, are you blushing." This nurse responded "I am just trying to figure out why you think that is acceptable behavior or acceptable comments." Inmate Hugo began laughing and smiling. This nurse felt threatened by Hugo's statements and behavior and that he encouraged the other inmates to think that those comments and behavior is acceptable behavior, when it is not. (Offender Disciplinary Report attached to Complaint, d/e 1-1, p. 8.)

Plaintiff was found guilty of all three charges, receiving a punishment of three months grade demotion and segregation, one month loss of good time, and a disciplinary transfer to Pinckneyville Correctional Center, where Plaintiff remains incarcerated. Through the pursuit of internal remedies, Plaintiff was able to obtain the deletion of the dangerous communications and intimidations charges. The insolence charge still stands, but Plaintiff's segregation as a listed punishment was deleted because segregation is not an

allowable punishment for insolence.  The deletion was too late because Plaintiff had already served his three months in segregation.

During his segregation in the Pinckneyville Correctional Center, Plaintiff allegedly was unable to communicate with his loved ones because he could not use the phone or obtain envelopes to send letters.  Plaintiff was confined to his cell 24 hours per day except for 1-2 short yard periods per week which at times were cancelled due to weather.  Plaintiff was not allowed his electronics, daily showers, or law library access to pursue his ongoing cases, and he allegedly experienced physical and mental injury from his isolation and tight quarters.  He was denied prescribed physical therapy and allegedly suffered verbal abuse by staff.

Plaintiff maintains that Nurse Huston wrote the report to retaliate against Plaintiff for testifying in another inmates' civil rights action against a Western Illinois correctional officer the day before, <u>Bolden v. Law</u>, 16-cv-3097.  Plaintiff believes that unidentified officers at Western told Nurse Huston what to write in her disciplinary report.

## Analysis

Plaintiff contends that his interaction with Nurse Huston obviously did not support disciplinary charges for dangerous communications or intimidation/threats, the only charges that carried segregation as a possible punishment. A dangerous communication is defined by the IDOC rules as "engaging in verbal or written communication that is likely to encourage violence against persons or that is likely to disrupt or endanger the safety and security of the facility, including but not limited to escape plans and manufacturing of weapons." Intimidation or threats is described as "[e]xpressing by words, actions or other behavior an intent to cause harm to any person or property that creates the reasonable belief that physical, monetary, or economic harm to that person or to another will result; . . . ." (IDOC rules attached to Compl., d/e 1-1 p. 16.)

Plaintiff's argument is essentially a procedural due process argument that the guilty finding was not supported by some evidence because the facts in Nurse Huston's disciplinary report did not on their face meet the elements of

the more serious charges. Superintendent v. Hill, 472 U.S. 445, 455 (1985)(procedural due process requires that "some evidence" support the decision.)

Procedural due process protections are required only when the deprivation suffered is an "atypical and significant deprivation in relation to the ordinary incidents of prison life." Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). In the prison environment, placement in segregation for relatively short periods of time is generally not an atypical and significant deprivation. Sandin, 115 S.Ct. at 2301 (1995) (finding no constitutionally protected liberty interest in avoiding 30 days of segregation). The length of the segregation and the conditions endured both determine whether a constitutional liberty interest is implicated.

Whether Plaintiff's three-month segregation amounted to a serious enough deprivation to trigger procedural due process rights is doubtful. *See, e.g.,* Hardaway v. Meyerhoff, 734 F.3d 740, 744 (7th Cir. 2013)(six months in disciplinary segregation did not trigger procedural due process where inmate was "not deprived of all human contact and was permitted to use the

shower and prison yard once every week)(finding qualified immunity); Marion v. Columbia Correction Inst., 559 F.3d 693, 697 n. 2 (7th Cir. 2009)(listing cases finding no liberty interest in avoiding "relatively short periods of segregation" from 2 days to 90 days); Lekas v. Briley, 405 F.3d 602 (7th Cir. 2005)(90 days combined segregation in Stateville did not trigger procedural due process protections); Beamon v. Pollard, 711 Fed.Appx. 794 (7th Cir. 2018)(not published in Fed.Rptr.)(135 days in segregation did not trigger procedural due process protections absent atypical segregation conditions); *but see* Toston v. Thurmer, 689 F.3d 828 (7th Cir. 2012)(remanding for determination of whether 90 days in segregation was an atypical and significant deprivation). Plaintiff's description of his disciplinary segregation does not seem significantly harsher as compared to other kinds of segregation or the normal prison environment.[2]

Even if Plaintiff's segregation were harsh enough to trigger procedural due process rights, Nurse Huston's

---

[2] Plaintiff lost good time on the insolence charge, which means a procedural due process challenge to the insolence charge is barred under Heck v. Humphrey, 512 U.S. 477, 487 (1994), but he is not contesting the insolence charge.

description of the incident in her report was enough evidence to support the committee's guilty finding on at least the dangerous communication charges. An individual could conclude from that description that Nurse Huston reasonably perceived Plaintiff's behavior as embarrassing, harassing, intimidating, and a threat to Nurse Huston's authority, and, therefore, "likely to disrupt or endanger the safety and security of the facility." That Plaintiff did not intend his behavior to be taken that way does not preclude Nurse Huston from drawing her own conclusions from her own experiences and from the prison context. That the charges were eventually deleted on appeal means only that reasonable minds may differ on interpreting Plaintiff's behavior. *See* <u>Hill,</u> 472 U.S. at 455 (The "some evidence" standard is a lenient one); <u>Lagerstrom v. Kingston</u>, 463 F.3d 621, 624 (7th Cir. 2006)("The fact that the [prison disciplinary] outcome was eventually overturned does not mean that the hearing failed to satisfy minimal procedural requirements."); <u>Hopson v. Superintendent</u>, 2014 WL 129320 * 3 (N.D. Ind.)(not published in F.Supp.)("Even if [prisoner's] letter might be open to another interpretation, this does not

mean his due process rights were violated when the hearing officer concluded that the letter was threatening. To be constitutionally adequate, the evidence need not point to only one logical conclusion; rather, the question is whether there is some evidence to support the hearing officer's determination.") Plaintiff does not state a procedural due process claim.

Plaintiff also pursues a retaliation claim. However, Plaintiff's allegation that Nurse Huston was motivated by retaliation for Plaintiff's testimony in the Bolden case is too speculative and conclusory. EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776 (7th Cir. 2007)(factual "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'")(*quoted cite omitted*). The hearing in Bolden regarded whether the inmate had exhausted his administrative remedies on the inmate's claim involving a strip search in the Western Illinois Correctional Center. The only defendant in the Bolden case was Bryon Law, a correctional officer. Bryon Law is not a defendant in this case, and the Plaintiff in this case was not a plaintiff in the Bolden case. The Bolden case was not about

Nurse Huston or the health care unit. No plausible inference arises that Nurse Huston was even aware of the Bolden case, much less that she knew Plaintiff had testified in that case or that she might be motivated to trump up disciplinary charges because of that testimony. Further, Plaintiff admits that Plaintiff's own comment was the reason Nurse Huston wrote her report. If Plaintiff had not made the comment, he would not have been disciplined.

To the extent Plaintiff challenges the constitutionality of his conditions in segregation in the Pinckneyville Correctional Center, no plausible inference arises that any named Defendants were personally responsible for those conditions. Kuhn v. Goodlow, 678 F.3d 552. 556 (7th Cir. 2012)("'An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'")(quoted cite omitted). Further, a claim challenging Plaintiff's segregation conditions in Pinckneyville would belong in the Southern District of Illinois. This Court does not address whether the segregation conditions described allow a plausible inference of a constitutional violation.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's complaint is dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A.

2) Plaintiff may file an amended complaint by December 18, 2018. If Plaintiff does not file an amended complaint or Plaintiff's amended complaint still fails to state a claim, then this action will be dismissed for failure to state a claim and a strike will be assessed against Plaintiff pursuant to 28 U.S.C. 1915(g). If Plaintiff files an amended complaint, the amended complaint will replace the original complaint. Piecemeal amendments are not permitted.

ENTERED:    November 20, 2018

FOR THE COURT:

 s/Sue E. Myerscough<br>
SUE E. MYERSCOUGH<br>
UNITED STATES DISTRICT JUDGE